## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (NORTHERN DIVISION)

| | | |
|---|---|---|
| **FLEXCEL, INC.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. AMD 02CV3825** |
| **LUI CORPORATION,** *et al.,* | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### ANSWER AND COUNTER-CLAIM

LUI Corporation ("LUI"), Defendant, by James A. Dunbar and Daniel P. Moylan, with Venable, Baetjer and Howard, LLP, pursuant to the Federal Rules of Civil Procedure and this Court's Order, hereby answers the Complaint filed by Flexcel, Inc. ("Flexcel"), and counter-claims against Flexcel, as follows:

### ANSWER

1.  The Complaint fails to state a claim upon which relief can be granted.

2.  LUI generally denies liability.

3.  LUI admits, denies, or is without sufficient knowledge to admit or deny the individual allegations in the Complaint as follows:

### Introduction

1.  LUI admits that it and Flexcel were in a contractual relationship. LUI denies the remainder of the allegation.

<u>Parties</u>

2.  LUI is without knowledge or information sufficient to form a belief as to the truth of this averment and is unable to admit or deny the allegation.

3.  LUI admits that it is a Maryland Corporation.  LUI admits that it sold office furniture at the time Flexcel drove LUI out of business, but denies that *at all times* pertinent to this matter Flexcel and its divisions and affiliates manufactured the furniture LUI sold.  LUI denies the remainder of the allegation.

4.  Admitted.

<u>Jurisdiction and Venue</u>

5.  Admitted.

6.  Admitted.

<u>Facts Common to All Counts</u>

7.  LUI admits that on or about December 12, 1997, it and Flexcel, then known as Kimball International Manufacturing, Inc., by and through its upholstered products division, Kimball Upholstered Products, entered into a Product Sale Agreement. The terms of that agreement are as stated therein.  LUI further admits that Flexcel, by and through its Kimball Office Casegoods Manufacturing division, began to manufacture casegoods furniture for LUI in or about January 2000.  The terms of that agreement are as stated in the purchase orders for

the casegoods, except as modified by the parties' conduct.  LUI
also admits that on or about October 9, 2001, it and Flexcel
entered into a Consolidated Supply Agreement ("the Supply
Agreement"), the terms of which are as stated therein.

8.  LUI admits that it had an account payable to Flexcel in the fall
of 2000 and spring of 2001, but denies that it fell behind on its
payment obligations *as alleged in the Complaint*.  LUI admits
that in or about February 2002, Flexcel attempted suddenly to
change the terms of LUI's credit arrangement with Flexcel and
threatened to stop manufacturing product for LUI if it did not
agree to the proposed changes.  LUI denies the remainder of
the allegation.

9.  LUI admits that it negotiated with Flexcel concerning its LUI
account receivable, and that part of those negotiations occurred
between Mr. Rosolio and Mr. Phillips, but denies the remainder
of the allegation.

10. Denied, except that as to Flexcel's motive for or intent
concerning its conduct, LUI is without knowledge or
information sufficient to form a belief as to the truth of this
averment and is unable to admit or deny this aspect of the
allegation.

11. Denied.

12. Denied.  LUI admits that it owes a certain amount to Flexcel, but is, at this time, without knowledge or information sufficient to state a sum certain.

13. Denied.

COUNT I
(Breach of Contract)

14. LUI admits, denies or is without sufficient information to admit or deny each of the incorporated allegations as set forth above.

15. As set forth in more detail above, LUI admits that it and Flexcel entered into the Supply Agreement and that its terms are as stated therein.

16. Denied.

17. LUI is without knowledge or information sufficient to form a belief as to the truth of this averment and is unable to admit or deny the allegation.

4. LUI denies Flexcel's *ad damnum* claims.

5. LUI asserts the affirmative defenses of accord and satisfaction, estoppel, fraud, illegality, laches, release, statute of limitations, and waiver.

COUNTER-CLAIM

6. LUI incorporates and re-alleges the allegations concerning jurisdiction and venue set forth in Flexcel's complaint.  This case involves corporations that are citizens of different states and claims for damages over Seventy Five Thousand Dollars ($75,000).  Hence, this Court has diversity jurisdiction over this matter.

7.  LUI was a long-established Baltimore-based furniture manufacturer and supplier that went out of business in August 2002.  Throughout most of its history, LUI manufactured the office furniture it sold.

8.  In December 1997, Flexcel began to manufacture office chairs for LUI using its specifications.  The chairs were sold by LUI using its brand name, but were manufactured by Flexcel upon receiving a purchase order from LUI, and shipped directly to LUI's customers.[1]

9.  Sometime shortly before January 2000, Flexcel approached LUI and offered to manufacture additional pieces of office furniture for LUI.  LUI agreed, and in addition to chairs, Flexcel began to manufacture office casegoods for sale under the LUI brand name according to LUI's specifications.

10. From 1997 through 2001, LUI continued to manufacture its own furniture, as well as place purchase orders with Flexcel for it to manufacture certain of LUI's orders.

11. In 2001, Flexcel again approached LUI and suggested that it stop manufacturing office furniture altogether, and instead contract with Flexcel to manufacture all of the furniture LUI's customers ordered.

12. On October 9, 2001, Flexcel and LUI entered into a Supply Agreement ("the Agreement").  (Attached as *Exhibit A*)  Pursuant to the Agreement, Flexcel was the exclusive manufacturer of the office goods LUI sold.

> [LUI] will be the reseller and [Flexcel] the will be
> [LUI's] exclusive manufacturer of the "Products."
> [LUI] will sell the "Products" under its own name.

---

[1]    Flexcel was known as Kimball International Manufacturing, Inc., when many of the events in this Counter-Complaint occurred.  For ease of reference, however, it is identified as Flexcel throughout.

The Agreement § 1 – Commitment.

13. Consequently, LUI shut down its manufacturing operations completely by February 2002.

14. Pursuant to the Agreement, Flexcel committed to meet LUI's commercial needs.

> Based on [LUI's] purchase orders that are accepted in writing by [Flexcel, it] will use commercially reasonable efforts to supply [LUI] with all of [its] requirements for the Products for the term of this Agreement (excepting circumstances beyond the reasonable control of [Flexcel]).

The Agreement § 1 – Commitment.

15. One of LUI's prime commercial needs was that Flexcel stock a particular cherry melamine that was LUI's most popular melamine for its furniture. Flexcel knew of the need to stock sufficient amounts of cherry melamine based on LUI's representations and the five years Flexcel manufactured furniture for LUI.

16. Flexcel also committed to providing products to LUI's customers on a timely basis pursuant to the Agreement.  As Flexcel knew, once LUI placed orders with Flexcel, it was extremely important that Flexcel manufacture and ship the furniture to LUI's customers immediately because while LUI had to pay Flexcel for any order, LUI's customers did not pay until they received the furniture.  Hence, the parties agreed that Flexcel would ship all furniture LUI ordered to its customers within ten days of receiving a purchase order.

17. Over the course of their business dealings, LUI paid Flexcel 60-70 days from the date it manufactured furniture for delivery to LUI's customers.

18. Beginning in February 2002, after Flexcel had proposed the Agreement to LUI, the parties had reached the Agreement, and LUI completely shut down its manufacturing facility, Flexcel demanded that LUI pay all accounts more than 45 days past due.  Flexcel also threatened to stop manufacturing furniture for LUI if it did not bring its account current.

19. After little negotiation, Flexcel agreed that historically LUI paid on 60-70 day terms, and that it was improper for Flexcel to threaten to stop manufacturing product for LUI unless it agreed to a shorter credit term.

20. Nonetheless, over the next several months, Flexcel and LUI continued to discuss how LUI could bring its past due account more current.

21. In May 2002, Flexcel stopped stocking cherry melamine. Furthermore, it informed LUI that Flexcel would not be able to stock cherry melamine for at least three to four weeks.

22. Without cherry melamine, Flexcel could not fill the majority of orders that LUI placed within ten days.  In fact, LUI could not timely fill orders for furniture with a cherry melamine for over one month.

23. LUI's customers did not accept such a lengthy delay in the delivery of furniture.  Some customers who placed orders for furniture with a cherry melamine cancelled their orders.  Other customers refused to place orders with LUI upon learning of the over one month waiting period for delivery.  LUI lost hundreds of thousands of dollars of orders as a result of Flexcel's failure to stock cherry melamine.

24. Flexcel's failure to carry cherry melamine reduced LUI's income by over fifty percent.  As a result, in addition to other consequences, LUI could not pay Flexcel for past orders.

25. Beginning in June 2002, just after Flexcel's actions caused LUI to lose a substantial portion of its operating income, Flexcel again demanded that LUI bring its past due account current or Flexcel would stop manufacturing furniture for LUI.

26. As a result of Flexcel's breach of the Agreement, however, LUI was unable to make payments on its account payable to Flexcel.  Flexcel's breach depleted LUI's assets and risked rendering LUI a defunct corporation.

27. In July 2002, failing to recognize that its actions robbed LUI of the very capital it needed to operate, Flexcel again demanded that LUI take certain actions, including making a substantial payment on accounts Flexcel deemed to be past due. Flexcel threatened to stop manufacturing for LUI altogether if it did not agree to Flexcel's terms.

28. At the time Flexcel threatened to stop manufacturing furniture for LUI, it knew LUI no longer had the ability to manufacture furniture and that refusing to do so would render LUI unable to continue business.

29. Nevertheless, when LUI was unable to make the desired payment to Flexcel, it ceased manufacturing furniture for LUI.  Consequently, LUI was unable to continue operations and ceased all business by early August 2002.

## COUNT ONE
### (Breach of Contract)

30. LUI adopts all of the facts and allegations set forth above as if set forth individually herein.

31. Flexcel breached section 1 the Agreement by failing to stock cherry melamine.

32. Flexcel also breached section 1.1 of the Agreement by failing to deliver product to LUI's customers on a timely basis.

33. Flexcel further breached the Agreement by refusing to manufacture and ship products pursuant to valid purchase orders made by LUI.

34. LUI has been and continues to be damaged as a direct result of Flexcel's failure to conform to the Agreement's terms, as set forth above.  In particular, LUI – a company with a long and profitable history – is now defunct and no longer operating.

WHEREFORE, Plaintiff LUI Corporation prays this Court to enter judgment against Flexcel, Inc., in an amount that exceeds Five Hundred Thousand Dollars ($500,000.00), pre- and post-judgment interest, attorneys' fees, and demands such other and further relief as may be required.

_____/s/_____
James A. Dunbar
Federal Bar No. 007392
Daniel P. Moylan
Federal Bar No. 024719
Venable, Baetjer and Howard, LLP
210 Allegheny Avenue
P.O. Box 5517
Towson, Maryland  21285-5517
(410) 494-6200

*Attorneys for Defendant/Counter-Plaintiff
LUI Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of April, 2003, a copy of the foregoing

**ANSWER TO COMPLAINT AND COUNTER-CLAIM** was served electronically on:

> Theodore P. Stein, Esquire
> Theodore P. Stein, P.C.
> 51 Monroe Street, Suite 1200
> Rockville, MD 20850
>
> *Attorney for Plaintiff/Counter-Defendant*
> *Flexcel, Inc.*

_____/s/_____
Daniel P. Moylan